UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RODOLPH LANAGHAN,

    Petitioner,

v.                                                 Case No. 04-C-0568

JUDY SMITH, Warden

    Respondent.

**DECISION AND ORDER ON HABEAS PETITION**

**I. PROCEDURAL BACKGROUND**

The petitioner, Rodolph Lanaghan ("Lanaghan"), filed a habeas corpus petition pursuant to 28 U.S.C. § 2254 following his conviction and sentence in the Milwaukee County Circuit Court for first degree reckless homicide while using a dangerous weapon. Lanaghan was sentenced to thirty-two (32) years confinement and ten (10) years of extended supervision. Lanaghan appealed his conviction. In a decision dated January 17, 2003, the Wisconsin Court of Appeals affirmed his conviction. Lanaghan's petition for review in the Wisconsin Supreme Court was denied on June 12, 2003, and he did not file a petition for certiorari in the United States Supreme Court. Lanaghan thereafter filed his federal habeas petition on June 14, 2004.

Lanaghan's habeas petition initially raised four claims. First, Lanaghan alleged that his guilty plea was unlawfully induced and involuntary because his trial counsel failed to advise him of a pending motion to dismiss. Second, Lanaghan alleged ineffective assistance on the part of trial counsel based on the same grounds. Third, he alleged ineffective assistance of appellate counsel

because appellate counsel filed a no-merit report. Fourth, he claimed that the Wisconsin courts violated his rights by not recognizing a conflict of interest his appellate counsel had and that the Wisconsin Court of Appeals violated *Anders v. California*, 386 U.S. 738 (1967) by allowing its staff attorney to "do" the case rather than the court itself. The Honorable William C. Griesbach, to whom this action was originally assigned, conducted the initial screening of Lanaghan's petition pursuant to Rule 4 of the rules governing § 2254 cases. In his Rule 4 Order, dated June 18, 2004, Judge Griesbach concluded that Lanaghan's allegation that the court of appeals' staff attorneys decided his case was belied by the record and ordered that aspect of Lanaghan's fourth claim dismissed. In his Rule 4 Order, Judge Griesbach also ordered that the action be stayed pending Lanaghan's exhaustion of his state remedies with respect to his ineffective assistance of appellate counsel claims.

On June 6, 2005, Lanaghan filed a motion to reopen this action. On June 9, 2005, Judge Griesbach granted Lanaghan's motion to reopen his case and ordered the respondent to file her answer. Subsequently, both of the parties consented to magistrate judge jurisdiction, and on July 6, 2005, the action was transferred to this court. On July 20, 2005, the respondent filed her answer, and thereafter, the parties filed their respective briefs. Thus, Lanaghan's habeas corpus petition is now fully briefed and is ready for resolution.

## II. FACTUAL BACKGROUND

The following is a summary of the facts underlying Lanaghan's conviction as set forth in the no merit report filed by Lanaghan's appellate counsel, which was adopted by the Wisconsin Court of Appeals.

> [Lanaghan's conviction stems from] the shooting death of Joseph George during the early morning hours of February 25, 2000. The incident . . . resulted in Mr. George's death in a parking lot near the entrance to the Roadhouse Bar in Oak Creek. . . . .

2

Lanaghan's friends and co-defendants told him, the day before the incident, that they had been at the bar a week earlier and in a fight, that they were going back and that they wanted more people with them in case they were outnumbered. . . . [A]t the time the defendant accompanied his friends he had already consumed two 40 ounce containers of beer. Further, he was feeling down because of the recent death of his maternal grandmother.

Lanaghan took a broken .22 caliber handgun, a half of a pool stick, and a 2 x 4 with him. His stated reason for doing so was because his friends told him that their adversaries were members of the Maniac Latin Disciples and he believed that he might have to fend off a large group of people.

While Lanaghan and his friends were in the bar, a number of people came in, some of whom Lanaghan's friends indicated to him were from the group of the week before. There were discussions in the men's bathroom between some of these people and Jeffrey Groth. Although it appeared at first that the matter had been worked out, sometime during the course of the evening Jeffrey Groth obtained a .38 caliber pistol from a man called "Huffy" who had been at the bar earlier, but who had left before closing time, along with a girlfriend. Later in the evening, after Lanaghan overheard an alarming cell phone conversation, a discussion took place between Lanaghan and Brad, during which Brad told Lanaghan to get the gun from Jeff. Lanaghan then exchanged the [broken] .22 caliber pistol that he carried for Jeff's .38.

Lanaghan stated that he had consumed five or six beers and that he was becoming apprehensive and fearful because his friends kept telling him that their adversaries from the previous week's altercation were armed. Lanaghan's fears were further fueled when, while smoking outside the bar, he overheard a disturbing cell phone conversation by a person who he believed was one of the leaders of the adversary group. He interpreted the cell phone conversation in a way that indicated to him that the adversary group was armed.

At closing time, Lanaghan and his friends left to go to Jeff's car. Jeff was already in the car while Lanaghan and Brad were walking towards it. The others began coming out of the bar through the doorway. Lanaghan saw one of them make what he interpreted as a motion like pulling something out of the person's waistband. Lanaghan assumed the person was pulling out a gun. He panicked, firing five shots from the .38 caliber pistol in his possession towards the doorway into a gap in the crowd. His purpose in so doing, he stated, was to scare the adversaries so that he and Brad could get to the car before the other people shot at him.

As a result of the shots fired by Lanaghan, a man named Joseph George, who was both totally unknown to Lanaghan and completely uninvolved with either of the

3

two groups, was struck in the chest below the neck. The bullet severed a vein, causing him to bleed to death.

After Lanaghan fired the shots, he got into Jeff's car along with Brad. Jeff drove to Kevin Ziolkowski's home where the gun was stashed. They then left to go to someone else's house and were stopped by police en route.

After being interrogated, Lanaghan admitted to firing the gun, but later insisted that at the time of his confession, he was unaware that someone was killed.

Immediately before trial, the State offered to reduce the charge from intentional homicide to 1st degree reckless homicide with use of dangerous weapon, to which the State would recommend the maximum sentence. Lanaghan accepted the State's offer [and plead guilty to first-degree reckless homicide].

(Answer, Ex. B. at 3-5.)

### III. STANDARD OF REVIEW

Federal courts may issue a writ of habeas corpus for a person in custody pursuant to the judgment of a state court "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Furthermore, federal courts may not grant habeas relief with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to" federal law as determined by the Supreme Court if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially

indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision results in an "unreasonable application" of clearly established federal law when the state court either (1) "identifies the correct governing legal rule from [Supreme Court precedent] but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id*. at 407; *see also Harris v. Cotton*, 365 F.3d 552, 555 (7th Cir. 2004). Moreover, "[a] rule is 'clearly established' only if it is compelled by existing Supreme Court precedent." *Henry v. Page*, 223 F.3d 477, 480 (7th Cir. 2000).

## IV. DISCUSSION

As previously stated, Lanaghan has raised the following claims in support of his petition for a writ of habeas corpus: (1) that his guilty plea was involuntary, (2) that his trial counsel was ineffective, and (3) that his appellate counsel was ineffective. This court will address each claim in turn. This court will not, however, address Lanaghan's claim that the Wisconsin Court of Appeals violated the *Anders* doctrine when it allowed its staff attorneys to "do" his case, despite the fact that Lanaghan makes this argument as well as other *Anders*-related arguments in his brief. This is because, in his June 18, 2004 Rule 4 Order, Judge Griesbach dismissed Lanaghan's *Anders* claim, and Lanaghan has never sought to amend his habeas petition to include any other *Anders*-related claims.

Furthermore, with respect to each of the aforementioned claims, Lanaghan argues that, because the state did not file a brief in opposition to Lanaghan's petition for review in the Wisconsin Supreme Court, the respondent has waived her right to respond to Lanaghan's claims in this court. (Pet'r's Br. at 6.) Such being the case, this court will first address the argument that because the state

5

did not file a brief in opposition to Lanaghan's petition for review in the Wisconsin Supreme Court, the state waived its right to respond to petitioner's claims in state court, and hence, is bound by that waiver in this court. While it is true that the state did not file a *formal* response, that is, a brief addressing the merits of Lanaghan's claims, to Lanaghan's petition for review in the Wisconsin Supreme Court, the state did in fact respond to Lanaghan's petition. (Pet'r's Br., Ex. 1a.) Indeed, in its response, the state asserted that it opposed Lanaghan's petition for review. (Pet'r's Br., Ex. 1a.) Thus, the state did not, as Lanaghan argues, waive its right to respond to Lanaghan's petition or any arguments in support of such response.

Rather, the state simply waived its right to file a *formal* response, that is, a brief rather than a letter, in opposition to Lanaghan's petition for review. By filing a response, even though it did not address the merits of Lanaghan's arguments and simply asserted the state's opposition to Lanaghan's petition, the state preserved its right to raise arguments in defense of Lanaghan's claims in this court. Nor did the state expressly waive its right to raise Lanaghan's failure to exhaust his ineffective appellate counsel claim when it waived its right to file a formal response, i.e. a brief addressing the merits of Lanaghan's claims. Such being the case, Lanaghan's argument, that the respondent has waived any arguments in this court by failing to file a brief in opposition to Lanaghan's petition for review in the Wisconsin Supreme Court, must fail.

A. *Ineffective Assistance of Trial Counsel*

Lanaghan argues that his trial counsel was ineffective because trial counsel did not advise him that a motion to dismiss the first-degree intentional homicide charge was still pending when Lanaghan plead guilty to the reduced charge of first-degree reckless homicide. (Pet'r's Br. at 11.) More precisely, Lanaghan asserts that, if he had known about the pending motion to dismiss the first-
6

degree intentional homicide charge, he would have either demanded a ruling on the motion to dismiss before pleading to the reduced charge, or he would have gone to trial on the first-degree intentional homicide charge. (Pet'r's Br. at 10.) The respondent argues that, because the motion to dismiss the charge of first-degree intentional homicide had no chance of succeeding, trial counsel's failure to advise Lanaghan of the pending motion to dismiss, was not prejudicial under *Strickland v. Washington*, 466 U.S. 668 (1984).

Defendants in criminal cases have a constitutional right to effective assistance of counsel. *Strickland*, 466 U.S. at 686. In order to establish an ineffective assistance of counsel claim, a defendant must demonstrate both that counsel's assistance was ineffective, and that the ineffective assistance prejudiced the defendant. A defendant must demonstrate that "counsel's representation fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 688, 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

The burden on a habeas petitioner to show that counsel's assistance was ineffective is not easily satisfied. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

7

Furthermore, a habeas court need not address the two prongs of *Strickland* in any particular order or even address both if the defendant makes an inadequate showing as to one. In this latter regard the Supreme Court in *Strickland* clearly stated:

> [T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

466 U.S. at 697.

The Wisconsin Court of Appeals identified the correct constitutional standard to apply when assessing Lanaghan's ineffective assistance of trial counsel claim. The Wisconsin Court of Appeals adopted the description and analysis of the case provided by petitioner's appellate counsel in the no merit report, and independently concluded that pursuing the issues identified in the no merit report would lack arguable merit. (Pet., Ex. 1 at 2.) The no merit report, and therefore, the court of appeals decision cited directly to *Strickland*. Thus, the court of appeals correctly identified the Supreme Court precedent ("clearly established Federal law, as determined by the Supreme Court of the United States") that was to govern its consideration of the effectiveness of Lanaghan's trial counsel. This court, then, must determine whether the court of appeals' application of the *Strickland* standard was unreasonable. That is to say, in order for habeas relief to be granted, the court of appeals' decision must be "more than incorrect or erroneous," it must be "objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003).

The court of appeals' determination that Lanaghan received the effective assistance of counsel was not an unreasonable application of *Strickland*. In *Hill v. Lockhart*, 474 U.S. 52 (1985), the

8

Supreme Court held that the *Strickland* test applies to guilty plea challenges based on the alleged ineffective assistance of counsel. Where a defendant's challenge to his plea is based on the alleged ineffective assistance of counsel, the defendant must show (1) that counsel's representation fell below an objective standard of reasonableness, which is determined by the range of competence demanded of attorneys in criminal cases; and (2) that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and *would have insisted* on going to trial." *Id.* at 56-59 (emphasis added); *St. Pierre v. Walls*, 297 F.3d 617, 628 (7th Cir. 2002). Additionally, whether the defendant would have gone to trial but for counsel's errors "will depend largely on whether the [] defense likely would have succeeded at trial." *Hill*, 474 U.S. at 59.

Here, there was almost no chance that trial counsel's motion to dismiss the first-degree intentional homicide charge would have succeeded. In the motion to dismiss, Lanaghan's trial counsel argued that, given the state's second-degree reckless homicide conviction against co-defendant Jeffrey Groth, the state was collaterally estopped from charging Lanaghan with first-degree intentional homicide. (Resp't's Br., Ex. B2.) However, as the respondent points out in her brief, when Lanaghan's trial counsel filed the motion to dismiss, the "Wisconsin Court of Appeals had already decided that a defendant could not assert against the government the doctrine of collateral estoppel, either as enshrined in the Fifth Amendment's guarantee against double jeopardy or as part of the common law, based on facts determined in a prior prosecution of another person for the same crime." (Resp't's Br. at 9.)

Indeed, in *Holland v. State*, Holland argued that, because his co-defendant, Hoppe, was already found guilty of second-degree murder, "the Hoppe jury's implicit finding of no intent to kill determined that issue against the State [and] precluded a conviction of first degree murder [against

9

Holland]." 87 Wis. 2d 567, 582-83, 275 N.W.2d 162, 170 (Wis. Ct. App. 1979), *rev'd on other grounds*, 91 Wis. 2d 134, 280 N.W.2d 288 (1979). Holland based his argument on both double jeopardy and collateral estoppel grounds. In rejecting Holland's double jeopardy claim, the Wisconsin Court of Appeals held that because Holland had not been previously tried on the first-degree murder charge, he had never been placed in jeopardy. *Id.* at 582, 275 N.W.2d at 170. Furthermore, while the Wisconsin Court of Appeals noted that the common law doctrine of collateral estoppel was recognized in some jurisdictions, the court held that the enactment of Wis. Stat. § 939.05(1) (Wisconsin's party-to-a-crime statute) foreclosed the court from applying the common law doctrine of collateral estoppel to the facts of Holland's case. *Id.* at 583, 275 N.W.2d at 170. The Wisconsin Court of Appeals held that: "Regardless of the persuasiveness of the policy arguments raised in [the cases which recognize the common law doctrine of collateral estoppel] and by the parties, we are not at liberty to grant Holland's request on common law grounds. The legislature has clearly spoken on this issue in sec. 939.05(1), Stats [Wisconsin's party-to-a-crime statute]. . . . The statutory language is unambiguous and forecloses Holland's claim." *Id.*; 275 N.W.2d at 170.

Thus, in light of the Wisconsin Court of Appeals' decision in *Holland*, Lanaghan's motion to dismiss the first-degree intentional homicide charge on collateral estoppel grounds had almost no chance of succeeding. *See St. Pierre*, 297 F.3d at 628 (stating that "a lawyer need not advise his client of every defense or argument or tactic that while theoretically possible is hopeless as a practical matter") (internal quotations omitted). And, if Lanaghan rejected the state's plea offer, proceeded to trial on the first-degree intentional homicide charge, and was unsuccessful at trial, he would have faced life imprisonment. Accordingly, the circumstances of the case compel the conclusion that had Lanaghan's trial counsel advised him of the pending motion to dismiss arguing the collateral estoppel

10

defense (which Lanaghan's trial counsel may very well have done), and had Lanaghan decided to proceed to trial and press the defense, he would most likely have come out far worse than he did. *See Panuccio v. Kelly*, 927 F.2d 106, 109 (2d. Cir. 1991) (stating that "the likelihood that [a defense] will be successful and an assessment of the probable increase or reduction in sentence relative to the plea if the defendant proceeds to trial are clearly relevant to the determination of whether an attorney acted competently in recommending a plea"). While a sentence comprising of a thirty-two (32) year term of confinement is serious, prior to his guilty plea Lanaghan was in a situation where the collateral estoppel defense to the first-degree intentional homicide charge had a negligible chance of success and also carried the appreciable risk that Lanaghan could be sentenced to life imprisonment, that is, if the defense was unsuccessful.

Thus, there is no "reasonable probability" that if trial counsel had advised Lanaghan of the existence of the pending motion to dismiss, Lanaghan would not have pleaded guilty to first-degree reckless homicide and instead *insisted* on going to trial on the first-degree intentional homicide charge. That is to say, there is no "reasonable probability" that advising Lanaghan of the collateral estoppel defense would have produced a more favorable result for him. In sum, the court of appeals' determination that Lanaghan received the effective assistance of trial counsel was not an unreasonable application of *Strickland*. Consequently, Lanaghan is not entitled to habeas relief based on the claimed ineffective assistance of his trial counsel.

B. *Voluntariness of Guilty Plea*

Lanaghan argues that his guilty plea was not knowing and voluntary. Specifically, Lanaghan asserts that, because his trial counsel never informed him of the pending motion to dismiss the first-degree intentional homicide charge, his plea to the reduced charge of first-degree reckless homicide

11

was involuntary. (Pet'r's Br. at 5.) Lanaghan further asserts that if he had known of the available defenses to the first-degree intentional homicide charge against him, and had he known of the pending motion to dismiss the first-degree intentional homicide charge, he would not have plead guilty to first-degree reckless homicide, and rather, would have insisted upon going to trial on the first-degree intentional homicide charge. (Pet'r's Br. at 6.) Alternatively, Lanaghan argues that he would have demanded a ruling upon the motion to dismiss before making a decision to go to trial on the first-degree intentional homicide charge or plead guilty to a lesser charge. (Pet'r's Br. at 18.) The respondent asserts that because the motion to dismiss the first-degree intentional homicide charge had no chance of succeeding, counsel's failure to advise Lanaghan that the motion was pending when he entered his guilty plea does not render that plea involuntary.

A guilty plea is properly accepted if it is made voluntarily and intelligently. *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969). "[T]he Constitution insists, among other things, that the defendant enter a guilty plea that is voluntary and that the defendant must make related waivers knowingly, intelligently, and with sufficient awareness of the relevant circumstances and likely consequences." *United States v. Ruiz*, 536 U.S. 622, 629 (2002) (internal quotations omitted).

> And the law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply in general in the circumstances--even though the defendant may not know the specific detailed consequences of invoking it. A defendant, for example, may waive his right to remain silent, his right to a jury trial, or his right to counsel even if the defendant does not know the specific questions the authorities intend to ask, who will likely serve on the jury, or the particular lawyer the State might otherwise provide. . . . [T]his Court has found that the Constitution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor. *See Brady v. United States*, 397 U.S., at 757,

12

> 90 S.Ct. 1463 (defendant "misapprehended the quality of the State's case"); *ibid.* (defendant misapprehended "the likely penalties"); *ibid.* (defendant failed to "anticipate" a change in the law regarding relevant "punishments"); *McMann v. Richardson*, 397 U.S. 759, 770, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) (counsel "misjudged the admissibility" of a "confession"); *United States v. Broce*, 488 U.S. 563, 573, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989) (counsel failed to point out a potential defense); *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973) (counsel failed to find a potential constitutional infirmity in grand jury proceedings).

*Id.* at 629-31.

The Wisconsin Court of Appeals identified the correct constitutional standard to apply when assessing the voluntariness of Lanaghan's guilty plea. To reiterate, the Wisconsin Court of Appeals adopted the description and analysis of the case provided by petitioner's counsel in the no merit report, and independently concluded that pursuing the issues identified in the no merit report would lack arguable merit. (Pet., Ex. 1 at 2.) Although the no merit report, and therefore, the court of appeals decision, did not cite directly to *Boykin*, the court did cite to *State v. Bartelt*, 112 Wis. 2d 467, 474-75, 334 N.W.2d 91 (1983), which incorporates *Boykin*. *Bartelt*, 112 Wis. 2d at 476, 334 N.W.2d at 94 ("*Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), specifically provides that, unless the record affirmatively demonstrates a knowing waiver of the rights of self-incrimination and confrontation, the upshot is a denial of due process.").

Thus, the court of appeals correctly identified the Supreme Court precedent ("clearly established Federal law, as determined by the Supreme Court of the United States") that was to govern its consideration of the voluntariness of Lanaghan's guilty plea. This court, then, must determine whether the court of appeals' application of the *Boykin* standard was unreasonable. And, as previously noted, in order for habeas relief to be granted, the court of appeals' decision must be

13

"more than incorrect or erroneous," it must be "objectively unreasonable." *Wiggins*, 539 U.S. at 520-21.

The court of appeals determination that Lanaghan's guilty plea was knowingly and voluntarily given was not an unreasonable application of *Boykin*. In *Tollett v. Henderson*, 411 U.S. 258 (1973), the U.S. Supreme Court held that "if a prisoner pleads guilty on the advice of counsel, he must demonstrate that the advice was not 'within the range of competence demanded of attorneys in criminal cases.'" 411 U.S. at 266 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)); *United States v. Alvarez-Quiroga*, 901 F.2d 1433, 1437 (7th Cir. 1990) ("When a defendant asserts that his guilty plea is not voluntary and intelligent because of counsel's erroneous advice, he must demonstrate that the advice was not within the range of competence demanded of attorneys in criminal cases.") (internal quotations omitted). As the Supreme Court further stated:

> The principal value of counsel to the accused in a criminal prosecution often does not lie in counsel's ability to recite a list of possible defenses in the abstract, nor in his ability, if time permitted, to amass a large quantum of factual data and inform the defendant of it. Counsel's concern is the faithful representation of the interest of his client, and such representation frequently involves highly practical considerations as well as specialized knowledge of the law.

*Tollett*, 411 U.S. at 267-68.

Here, even if trial counsel failed to apprise Lanaghan of the pending motion to dismiss arguing that the government was barred by collateral estoppel from charging Lanaghan with first-degree intentional homicide, trial counsel's conduct was not outside the range of competence demanded of attorneys in criminal cases. This is because, as discussed in connection with Lanaghan's Sixth Amendment claim, trial counsel had every reason to believe that the collateral estoppel defense had almost no chance of success, and if unsuccessful, Lanaghan would face life

14

imprisonment. Of course, it would have been better for trial counsel to have advised Lanaghan of the pending motion to dismiss and collateral estoppel argument, as counsel may well have done, while recommending against relying upon it. *Mitchell v. Scully*, 746 F.2d 951, 957 (2d Cir. 1984). But, even assuming trial counsel did not advise Lanaghan of the pending motion to dismiss, his failure to do so, under the circumstances of this case, was not outside the range of competence demanded of attorneys in criminal cases.

Indeed, the argument that the government was collaterally estopped from charging Lanaghan with first-degree intentional homicide was a <u>possible</u> defense to the charge. And, it may be true that Lanaghan had some misapprehensions about his case when he decided to plead guilty to first-degree reckless homicide. However, his misapprehensions were of the type referenced in *Ruiz* which the Supreme Court determined did not render a plea involuntary and unknowing. More precisely, in *Ruiz* the court cited earlier cases where misapprehensions regarding the strength of the State's case, <u>the existence of a defense</u>, and the existence of a constitutional violation did not render a plea involuntary and unknowing. 536 U.S. at 630-31 (emphasis added).

To reiterate, a federal habeas court "may not grant relief under the 'unreasonable application' prong unless the state court's application of Supreme Court precedent 'l[ies] well outside the boundaries of permissible differences of opinion.'" *Burt v. Uchtman*, 422 F.3d 557, 564 (7th Cir. 2005). The bottom line is that I cannot conclude that the court of appeals' decision was an unreasonable application of *Boykin*. Accordingly, Lanaghan is not entitled to habeas relief on his claim that his guilty plea was involuntary.

15

*C. Ineffective Assistance of Appellate Counsel*

Lanaghan argues that his appellate counsel was ineffective because he refused to raise the issue of the ineffective assistance of trial counsel because he "was from the same office" as trial counsel. Therefore, Lanaghan argues that his appellate counsel was both ineffective and had a conflict of interest. (Pet. at 8.) First, the court notes that Lanaghan's appellate counsel, Attorney James R. Lucius, did in fact raise an ineffective assistance of trial counsel claim in his no merit brief to the Wisconsin Court of Appeals. (Answer, Ex. B. at 16-20.) Thus, it does not appear that Lanaghan's ineffective assistance of appellate counsel claim is directed at Attorney James R. Lucius, as Attorney Lucius did raise an ineffective assistance of trial counsel claim, albeit in the court of appeals. Rather, it appears as though Lanaghan's ineffective assistance of appellate counsel claim is directed at Attorney Eugene Kaluzny, the attorney who filed Lanaghan's postconviction motion in the trial court, a motion which did not allege the ineffective assistance of trial counsel. Yet, regardless of whether Lanaghan's ineffective assistance of appellate counsel claim is directed at Attorney Kaluzny or Attorney Lucius, the bottom line is that both claims have been procedurally defaulted.

Before a federal court may review the merits of a habeas petition, a petitioner must: (1) exhaust all remedies available in state courts and (2) fairly present any federal claims in state court first, or risk procedural default. *See Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001) ("Failure to exhaust available state court remedies constitutes a procedural default."); *see also Bocian v. Godinez*, 101 F.3d 465, 468 (7th Cir. 1996) (same). "The habeas petitioner must present his federal constitutional claims initially to the state courts in order to give the state 'the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" *McGowan v. Miller*, 109

16

Case 1:04-cv-00568-WEC   Filed 08/16/06   Page 16 of 20   Document 29

F.3d 1168, 1172 (7th Cir. 1997) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)) (internal quotations omitted). This means that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Although interrelated, courts have discussed exhaustion of state remedies and procedural default as separate issues.

A petitioner has exhausted his state court remedies "by either (a) providing the highest court in the state a fair opportunity to consider the constitutional issue, or (b) having no further available means for pursuing a review of one's conviction in state court." *Wallace v. Duckworth*, 778 F.2d 1215, 1219 (7th Cir. 1985).

The procedural default hurdle forbids the federal courts from addressing claims that were not fairly presented to the state court. *Jones v. Washington*, 15 F.3d 671, 675 (7th Cir. 1994). Procedural default occurs either when a state court has declined to address a federal claim because the petitioner failed to satisfy an independent state procedural requirement, *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991), or when the petitioner fails to present a claim to the state courts at the time, and in the way, required by the state. *Hogan v. McBride*, 74 F.3d 144, 146 (7th Cir. 1996).

Under the doctrine of procedural default, a federal habeas court will not review defaulted claims unless the petitioner demonstrates either (1) cause for the procedural default and actual prejudice resulting from the alleged violation of federal law, or (2) that failure to consider the claims would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 749-50 (quoting *Murray v. Carrier*, 477 U.S. 478, 495 (1986)). The petitioner bears the burden of establishing that his procedural default is excused by one of these two exceptions. *See McCleskey v. Zant*, 499 U.S. 467, 494-95 (1991).

To satisfy the cause and prejudice standard, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488. The petitioner must also show that the errors of which he complains "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)) (emphasis in original). To demonstrate that a fundamental miscarriage of justice would result from a refusal to consider the defaulted claims, the petitioner is required to show that he is "'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998) (quoting *Murray*, 477 U.S. at 496). "This standard requires a petitioner to show that it is more likely than not that no reasonable juror would have convicted him." *Rodriguez v. Scillia*, 193 F.3d 913, 917 (7th Cir. 1999).

Wisconsin law provides the procedure for a prisoner to allege that his or her trial counsel was ineffective and the procedure for a prisoner to allege that his or her appellate counsel was ineffective. The proper procedure for alleging the ineffective assistance of trial counsel (or, more precisely, postconviction trial counsel) is to file either a motion for postconviction relief under Wis. Stat. § 974.06 or a petition for a writ of habeas corpus. *State ex rel. Rothering v. McCaughtry*, 205 Wis. 2d 675, 681, 556 N.W.2d 136, 139 (Wis. Ct. App. 1996). And, the proper procedure for a prisoner to allege the ineffective assistance of appellate counsel is to file a *State v. Knight*, 168 Wis. 2d 509, 484 N.W.2d 540 (1992) petition in the court of appeals. However, Lanaghan did not file either a § 974.06 postconviction motion alleging that his postconviction trial counsel was ineffective, or a petition for a writ of habeas corpus alleging the same. Nor did Lanaghan file a *Knight* petition in the court of appeals alleging that his appellate counsel, Attorney Lucius, was ineffective. Thus, in the

18

end, the bottom line is that, despite the court's grant of a year-long stay to provide Lanaghan the time to exhaust his ineffective assistance of appellate counsel claim, Lanaghan failed to do so.

Lanaghan argues that he did in fact exhaust his ineffective assistance of appellate counsel claim because he raised it in his amended petition for review in the Wisconsin Supreme Court. (Pet'r's Br. at 1.) First, the court notes that, even liberally construing Lanaghan's *pro se* amended petition for review, nothing in his amended petition for review references a claim that appellate counsel was ineffective because he failed to raise an ineffective assistance of trial counsel claim due to an alleged conflict of interest. (Answer, Ex. F.) Second, the court notes that a state prisoner cannot raise an ineffective assistance of appellate counsel claim for the first time in the Wisconsin Supreme Court. This is because without a lower court decision addressing the ineffective assistance of appellate counsel claim, there is no prior disposition of the issue for the Wisconsin Supreme Court to review.

Lanaghan was required to follow the procedure provided by Wisconsin law in order to fully and fairly present his claim to the Wisconsin courts. Thus, because Lanaghan did not present his ineffective assistance of appellate counsel claim to the state courts in the way required by the state, he has procedurally defaulted his ineffective assistance of appellate counsel claim. As previously stated, federal habeas relief is available only after the prisoner has afforded the state courts a full and fair opportunity to act on his claims. *O'Sullivan*, 526 U.S. at 842. Accordingly, because Lanaghan has procedurally defaulted his ineffective assistance of appellate counsel claim, the court will not address the merits of this claim.

Procedural default for federal habeas corpus purposes occurs when the petitioner fails to present a claim to the state courts at the time, and in the way, required by the state. *Hogan*, 74 F.3d

19

at 146. Given that Lanaghan failed to present his ineffective assistance of appellate counsel claim at the time, and in the way required by the state, it follows that his ineffective assistance of appellate counsel claim has been procedurally defaulted, that is, unless Lanaghan demonstrates either (1) cause for the procedural default and actual prejudice resulting from the alleged violation of federal law, or (2) that failure to consider the claims would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 749-50. However, Lanaghan has made no effort to satisfy either of the above exceptions to the procedural default doctrine. Consequently, this court finds that Lanaghan has procedurally defaulted his claim that his appellate counsel was ineffective.

## V. CONCLUSION AND ORDER

For all of the aforementioned reasons, Lanaghan has not demonstrated that he is entitled to habeas relief on any of the asserted grounds. Lanaghan's petition for writ of habeas corpus will therefore be denied and this action will be dismissed.

**NOW THEREFORE IT IS ORDERED** that the petitioner's petition for writ of habeas corpus be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**;

**IT IS FURTHER ORDERED** that the clerk of court enter judgment accordingly.

**SO ORDERED** this 16th day of August 2006, at Milwaukee, Wisconsin.

/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge